UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | | |
|---|---|---|
| TRISTAN HAYNES, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 6: 12-210-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| STEPHANIE MARTIN, et al., | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendants. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Plaintiff Tristan Haynes is currently confined at United States Penitentiary-McCreary ("USP-McCreary") in Pine Knot, Kentucky. Proceeding without an attorney, Haynes filed a civil rights complaint pursuant to the doctrine announced in *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971), against medical personnel at USP-McCreary. Haynes claims that the defendants have been deliberately indifferent to his serious medical needs relating to the treatment of his skin condition, in violation of his Eighth Amendment rights.[1] Post-screening, this action proceeded against Defendants Stephanie Martin, Family Nurse Practitioner ("FNP"); Marc Anthony Bryant, Public Health Service - Physician Assistant ("PHS-PA"); Karen Bennett-Baker, Advance Practice Nurse Practitioner ("APNP"); Rhonda Jones, Health Services Administrator ("HSA"); and Larry Stephens, Assistant Health Services Administrator

---

1   Richard B. Ives, Warden of USP-McCreary, and Shannon D. Withers, Associate Warden of USP-McCreary, were dismissed as defendants in this action on May 20, 2013. [*See* Record No. 11.]

("AHSA").[2] Haynes seeks a transfer to a prison where he can receive proper medical attention, punitive damages of $900,000.00, and compensatory damages of $100,000.00 for claimed damage to his skin.

Defendants PHS-PA Bryant, APNP Bennett-Baker, HSA Jones, and AHSA Stephens[3] have moved to dismiss the claims asserted against them pursuant to Rule 12(b) of the Federal Rules of Civil Procedure. Alternatively, they seek summary judgment under Rule 56. [Record No. 18] Additionally, Haynes has moved to amend the complaint. [Record No. 25] For the reasons explained below, the defendants' motion will be granted and the plaintiff's motion will be denied.

## I.

### A. Haynes' Complaint

Haynes contends that, in 2010, he sought treatment for a facial skin condition that initially was thought to be acne. He claims that medical personnel informed him that the Bureau of Prisons ("BOP") does not treat acne. As a result, Haynes was advised to obtain an over-the-counter medication in the commissary. [Record No. 1, p. 4] However, the medication

---

[2] Defendant FNP Martin was a temporary contract employee at US-McCreary and is not represented by the United States in this matter. The summons issued to FNP Martin was returned unexecuted and the plaintiff was provided notice of such on July 17, 2013. [Record No. 15] Five hundred twenty-seven days have passed since Haynes filed his Complaint and 246 days have passed since he was provided notice that the summons issued to FNP Martin was returned unexecuted. [*See* Record Nos. 1, 15; *see also* Fed. R. Civ. P. 4.] Despite filing numerous motions and pleadings after receiving notice that FNP was not served, Haynes has made no effort to either inquire about the status of service of process of FNP Martin or take any steps to further ensure service. Because FNP Martin has never been served with process, she is not before the Court. The claim asserted against her will be dismissed, without prejudice.

[3] Defendants PHS-PA Bryant, APNP Bennett-Baker, HSA Jones, and AHSA Stephens will be referred to collectively herein as "the defendants."

he obtained from the commissary was ineffective and his skin condition worsened, appeared to be infected, and began oozing blood and pus. [*Id*.] Haynes repeatedly returned to sick call seeking treatment for this condition. He was treated with penicillin but that medication did not alleviate the condition. Ultimately, a culture was taken, and he states that he had "some type of injection." [*Id.*] Haynes claims that the treatment he received from the USP-McCreary medical staff did not remedy his skin disorder and that it continued to worsen, was painful, left him with scarred skin and, at the time he filed his Complaint, had spread to his face, head, chest, hand, back, and leg. His skin disorder was ultimately diagnosed as Staphylococcus Epidermis, which is resistant to most of the treatments he has received. [*Id*.] Haynes contends his condition continues to be untreated. [*Id*.]

The exhibits attached to the Complaint indicate that, on March 1, 2012, Haynes was examined and evaluated by FNP Martin at the Health Services Unit. FNP Martin summarized this visit, finding:

> Subjective: 29 year old gentleman that states he has been seen repeatedly (more than 12 times in the last year) for what has been diagnosed as acne and keloids. He states that no matter the treatment it has gotten progressively worse. He presents extremely upset, stating he is under a great deal of stress. He is aware that the BOP does not treat acne, but his condition is supporative and seems to be worsening even with administration of antiobiotics [sic.]. Patient states he has tried everything in the commissary he can think of and currently is using neutrogena which he feels helps. Patient has had multiple cultures done. See reports. Last culture exhibited yeast. Patient denies all other problems or concerns. He complains of fatigue. Patient advised we will do routine health screening to make sure there are no other causatives and also I recommend possibly treatment for stress/anxiety as it this [sic] may help alleviate the heightened level of the outbreaks. Patient hygiene measures reviewed.

[Record No. 1-1, p. 7]

FNP Martin reported that the examination of Haynes' skin showed "pustules, comedomes [sic], keloids scattered over face copiously and extending to his trunk and back. Areas inflammed and swollen to face." [Record No. 1-1, p. 8] She prescribed metroNIDAZOLE tablets, Fluconazole tablets, and busPIRone tablets. [*Id*. at 8-9] Haynes was also advised to return to sick call as needed and to follow-up in two weeks. [*Id*.]

Haynes claims that the defendants have been deliberately indifferent to his serious medical needs by: (i) misdiagnosing his skin disorder; (ii) continuing to prescribe medication that was ineffective to remedy the skin condition; and (iii) not referring him to a dermatologist to treat this skin disorder before his skin became permanently damaged by this condition. Prior to filing this action, Haynes exhausted the administrative remedies available to him through the BOP.

### B. Haynes' Medical Records

Haynes' medical records establish that he has been receiving medical treatment regarding his skin condition from approximately July 2010 through July 28, 2013. Specifically, his records indicate that he began receiving treatment for his skin condition on July 12, 2010, while he was at the Federal Transfer Center in Oklahoma City, Oklahoma. At that time, he was prescribed Tetracycline[4] for acne. [Record No. 18-4, p. 2] On July 21, 2010, Haynes was transferred to USP-McCreary. Upon his arrival, he underwent a health screening by Health Services

---

4  Tetracycline is an antibiotic that fights bacteria in the body and is used to treat many different bacterial infections, such as urinary tract infections, acne, gonorrhea, chlamydia, and others. [*See* Record No. 18-4, p. 2 n.3.]

Registered Nurse ("RN") B. Burchett. Notably, Haynes reported no skin problems at that time and no skin lesions or body deformities were noted.

On August 20, 2010, Haynes was seen by PHS-PA Bryant for several medical complaints, including a skin problem. He was prescribed Doxycycline[5] for his skin problem. PHS-PA Bryant saw Haynes again on October 19, 2010, at which time he complained of skin problems and presented a history of folliculitis on his back. This condition improved while Haynes was taking Doxycycline for a two-week period, but it worsened after Haynes stopped taking that medication. As a result, Haynes' prescription for Doxycycline was renewed. *See* Declaration of Jorge Vasquez-Velazquez, M.D., p. 3 [Record No. 18-4, p. 3].

On December 29, 2010, Haynes was seen at sick call by Physician Assistant ("PA") M. Zugula for a complaint of a painful pustular rash on his face. During the examination, nodules, pustules, cysts and comedomes were noted, and Haynes reported a history of previous acne. He was prescribed Clindamycin, Baciraci/Polymyxin B. ointment, and Triamcinolone 0.1% cream. [*Id.*]

Haynes' complaints of a chronic acne-type skin condition continued into 2011. PA M. Zugula examined and prescribed treatment for Haynes in January, February, and March, 2011. Subsequently, he was seen by various other personnel in Health Services once in April, four times in May, once in June, and three times in July of that year for his skin condition. [Record No. 20] During these visits, the plaintiff was prescribed Sulfamethoxazole/Trimeth and was

---

5        Doxcycline is a tetracycline antibiotic. It fights bacteria in the body and is used to treat many different bacterial infections, such as urinary tract infections, acne, gonorrhea, chlamydia, periodontitis (gum disease) and others. [*See* Record No. 18-4, p. 3 n.9.]

educated on his condition and treatment plan. At various points, cultures were ordered and reviewed by the medical staff. In September, Haynes requested more medication for his skin. He was also seen by Health Services in October and November, and on December 27, 2011, he requested a referral to a dermatologist. [Record No. 20-1, p. 1]

In 2012, Haynes continued to seek and receive treatment at Health Services for his chronic skin condition. His BOP medical records for 2012 reflect that on January 4, 2012, Dr. Vazquez-Velazquez evaluated him, found cysts on his forehead, maxilla, chin, and anterior neck, and prescribed Doxycycline. [Record No. 20-1, pp. 2-4] Haynes followed-up and was seen, examined, and treated by FNP Martin on three different occasions in March and once in April. [*Id*., pp. 6-10, 13-16, 21-25, 29-34] In March 2012, the plaintiff's skin condition presented a marked improvement and appeared to be responding to the his treatment. During this time the medical staff continued to monitor the plaintiff's condition, taking cultures as well as scheduling follow-up appointments.

On May 16, 2012, Dr. Vazquez-Velazquez evaluated Haynes again because his skin lesion/rash was not responding to conservative treatment. [*Id.,* pp. 41-44] On August 9, 2012, Haynes was examined by a dermatologist for his ongoing skin problem, who reported:

> This disease is a problem with the oil glands that become secondarily infected. Unfortunately, conventional treatment is only temporarily helpful and most pts do best with a course of Accutane (13-cis-retinoic acid). The Septra should clear his acute infection but as has happened in the past [it] will most likely flare again within 1-2 mths. Long term doxycycline can be palliative and until he can be placed on Accutane if this is approved I would recommend after he clears putting him back on doxycycline 100 mg bid. He will most likely have to be placed on the iPLEDGE program to get the Accutane approved. I will be happy to discuss this further.

[*Id.*, p. 45]

Following the dermatological consultation, Haynes was seen on two separate occasions in August to obtain the medications recommended by the dermatologist and to discuss the side-effects of Accutane. Ultimately, Haynes decided to continue with the Doxycycline medication in lieu of trying Accutane.[6] [*Id.,* pp. 47-55] In the remainder of 2012, Haynes was seen in Health Services once in October, twice in November, and once in December for his chronic acne condition. [*Id.,* at pp. 57-65]

In 2013, Haynes was examined for follow-up encounters by Health Services for his continuing skin problem. During two visits to Health Services in March 2013, a dermatology consultation was prepared and a Medical Duty Status form was issued to allow the plaintiff to exchange his bed linens twice a week due to his medical condition. [*See* Record No. 20-2, pp. 1-18.] In June 2013, because Haynes was being considered for Accutane treatment, Health Services took pictures of Haynes' skin condition for use in a tele-dermatology consultation with Dr. John Hardin, BOP national dermatology consultant. Dr. Hardin noted Haynes' history of experiencing acneiform rash on his face, scalp, neck and torso for more than two years. [*Id.*, p. 27] Dr. Hardin reviewed the adverse side effects related to Accutane and noted that the most concerning of those was depression and suicide. [*Id.*] Dr. Hardin opined that if Haynes had a history of depression, suicide or suicidal ideation, or inflammatory bowel disease, he would not prescribe Accutane. He also recommended that if Haynes was approved for Accutane treatment,

---

6   Haynes' assertions that BOP medical staff treated him as "an experimental lab specimen" and that Accutane "presents a potential danger to his life" in support of his *Bivens* claims are without merit. [Record No. 24, p. 3] The fact that medical personnel informed the plaintiff of the potential dangers of taking Accutane belies any claim that the defendants were deliberately indifferent and does not support his position.

various baseline lab tests should be performed before treatment began and then monthly thereafter. [*Id.*, p. 28]

On July 1, 2013, Haynes returned to Health Services, and advised the medical staff that the antibiotic he was then taking was not working and he requested something else. [*Id.*, at p. 34] On July 8, 2013, Dr. Vazquez-Velazquez reviewed the lab tests from July 1. [*Id.*, at p. 44] Subsequently, the plaintiff's antibiotic medication was switched from Sulfamethoxazole/Trimeth to Ciprofloxacin. [*Id.*, p. 46] Haynes returned to Health Services again on July 26, 2013, for a follow-up visit. At that time, he was scheduled for another follow-up examination on August 21, 2013. [*Id.*, at p. 52]

## II.

Under Rule 12(b)(6), dismissal of an action is appropriate where a party fails to state a claim upon which relief can be granted. When evaluating a motion to dismiss under Rule 12(b)(6), the Court must determine whether the complaint alleges "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In reviewing a motion to dismiss for failure to state a claim, the Court's inquiry is limited to the parties' pleadings as well as any documents attached to, incorporated by, or referred to in the pleadings. Rule 12(d) provides that if, on a motion pursuant to Rule 12(b)(6), matters outside the pleadings are considered, the motion must be treated as a motion for summary judgment under Rule 56. Fed. R. Civ. P. 12(d).

Specifically, Rule 12(d) states:

(d) Result of Presenting Matters Outside the Pleadings. If, on a motion under Rule 12(b) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties shall be given reasonable opportunity to present all material made pertinent to the motion.

*Id.*

Here, the defendants have submitted a number of documents outside of the pleadings in support of their motion. For instance, they provide affidavits of prison medical personnel, including the declarations of Carlos J. Martinez and Jorge Vazquez-Velazquez, M.D. (with numerous exhibits), as well as Haynes' BOP medical records relative to his skin condition for 2010, 2011, 2012, and 2013. Because the Court has considered these documents in evaluation of their motion, the summary judgment standard will be applied.[7]

In evaluating a motion for summary judgment, the Court must determine whether there are any genuine issues regarding any material fact and whether the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element

---

7  Although Haynes contends that the defendants have refused to allow him to take discovery, he provides no proof or further explanation. The Court notes that Haynes filed his Complaint on October 9, 2012, and that the defendants did not file their dispositive motion until August 23, 2013. [Record Nos. 1, 18] Thus, Haynes had ample time to initiate discovery. Additionally, the Court granted his motion for an extension of time to file a response to the defendants' motion, allowing him an additional thirty days to file his response. [*See* Record No. 23.] Further, sealing Haynes' medical records was done to protect his privacy due to the sensitive nature of the materials (*i.e.*, personal identifiers, etc.). The defendant's motion was granted without prejudice and Haynes was informed that if he wished to have the documents unsealed he may file an appropriate motion. [*See* Record No. 21] Contrary to his claims, the Court's order in no way barred or prohibited him from "proceed[ing] with interrogatories" or allowing him access to his own medical records. [Record No. 32, p. 4]

essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corporation v. Catrett*, 477 U.S. 317, 322, (1986).

The Supreme Court has directed that a court must look beyond the pleadings and assess the proof to determine whether there is a genuine need for trial. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The relevant inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-53, (1986). The moving party has the burden of showing there is an absence of evidence to support a claim. *Celotex*, 477 U.S. at 324-25.

Importantly, once the moving party has met its burden of production, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Sigler v. Am. Honda Motor Co.*, 532 F.3d 469, 483 (6th Cir. 2008) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986)). Instead, the nonmoving party must present "*significant probative evidence*" of a genuine dispute in order to defeat the motion for summary judgment. *Chao*, 285 F.3d at 424 (emphasis added). The nonmoving party cannot rely upon the assertions in its pleadings; rather, it must come forward with probative evidence, such as sworn affidavits, to support its claims. *Celotex*, 477 U.S. at 324. In deciding whether to grant summary judgment, the Court views all the facts and inferences drawn from the evidence in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587.

**III.**

The defendants argue that Haynes' deliberate indifference claims fail as a matter of law. Specifically they contend that judgment in their favor is appropriate because: (i) Haynes has failed to state how all the defendants were personally involved in allegedly depriving him of his constitutional rights; (ii) Haynes' medical records establish that the defendants were not deliberately indifferent to his condition ( rather, his claims only demonstrate a disagreement with medical judgment and treatment which are insufficient to support his deliberate indifference claims); (iii) the doctrine of *respondeat superior* limits the liability of Defendants HSA Jones and AHSA Stephens; (iv) Defendant PHS-PA Bryant has statutory immunity under 42 U.S.C. § 233(a); and (v) the claims against the remaining defendants are barred by qualified immunity. [Record Nos. 18-1; 26] Haynes responds, mostly reiterating his previous allegations. However, he has failed to provide any facts, affidavits, or citations to the record in support of his attempt to overcome summary judgment. [Record Nos. 24, 32]

**A.    Eighth Amendment Standards**

**1.    Deliberate Indifference**

The Supreme Court has held that "[t]o state a cognizable claim [under the Eighth Amendment with regard to medical care] a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to the plaintiff's serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). In *Noble v. Three Forks Regional Jail Authority*, No. 5: 12-342, 2014 U.S. Dist. LEXIS 16043 (E.D. Ky. Feb. 10, 2014), this Court explained that to succeed on a deliberate indifference claim, a plaintiff is required to: "(i) show that the official

is aware of facts from which he could have inferred that an excessive risk to the health of an inmate existed; (ii) the official actually drew the inference that the detainee was at an excessive risk of harm and having so inferred; (iii) the official failed to take adequate precautions to prevent the harm from befalling the inmate." *Id.* at *12-13 (citing *Farmer v. Brennan*, 511 U.S. 825 (1994)).

The Eighth Amendment contains both an objective and a subjective component. *Wilson v. Seiter*, 501 U.S. 294 (1991); *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001). The objective component requires the existence of a "sufficiently serious medical need." *Blackmore v. Kalamazoo County*, 390 F.3d 890, 895 (6th Cir. 2004). A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Id*. at 897. The subjective component requires a plaintiff to allege facts that, if true, would demonstrate that "'the official [knew] of and disregard[ed] an excessive risk to inmate health or safety,' which is to say 'the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Clark-Murphy v. Foreback*, 439 F.3d 280, 286 (6th Cir. 2006) (quoting *Farmer*, 511 U.S. at 837).

Deliberate indifference may be "manifested by prison doctors in their response to a prisoner's needs or by prison [staff] in *intentionally* denying or delaying access to medical care or *intentionally* interfering with treatment once prescribed." *Estelle*, 429 U.S. at 104 (emphasis added). Stated differently, the Eighth Amendment prohibits mistreatment "only if it is tantamount to 'punishment,' and thus courts have imposed liability upon prison officials only

where they are 'so deliberately indifferent to the serious medical needs of prisoners as to unnecessarily and wantonly inflict pain.'" *Perez*, 466 3d at 423 (citing *Horn v. Madison County Fiscal Court*, 22 F.3d 653, 660 (6th Cir. 1994)).

### 2. Medical Judgment

No claim of a constitutional dimension is stated where a prisoner challenges only matters of medical judgment or otherwise expresses a mere difference of opinion concerning an appropriate course of treatment. *Westlake v. Lucas,* 537 F.2d 857, 860 n. 5 (6th Cir. 1976); *Sharpe v. Patton,* No. 08-CV-58-HRW, 2010 U.S. Dist. LEXIS 3924, at *29 (E.D. Ky. Jan. 19, 2010) ("[W]here one medical professional differs with another as to the course of treatment, the one offering more conservative treatment does not act with either a 'culpable state of mind' or with wantoness, under the subjective prong of the Eighth Amendment. Differences of opinion as to matters of medical judgment, negligent treatment or even medical malpractice are insufficient to state a [deliberate indifference] claim . . . ."). When the cause of action is based on an allegation that the prescribed treatment was inadequate in some way, rather than on an allegation that the prison official failed to provide the plaintiff with any treatment, courts traditionally have been reluctant to second-guess the medical official. *Rodriguez v. Lappin*, No. 08-CV-347-GFVT, 2009 WL 2969510, at *6-7 (E.D. Ky. Sept. 11, 2009).

Simply put, differences of opinion as to matters of medical judgment, negligent treatment or even medical malpractice are insufficient to establish that one has received inadequate medical care in violation of the Eighth Amendment. *See, e.g., Estelle*, 429 U.S. at 106; *Kelly v. McGinnis*, 899 F.2d 612, 616 (7th Cir. 1990); *Greer v. Daley*, No. 01-C-586-C, 2001 WL

34377922, at *3 (W.D. Wis. Dec. 21, 2001) ("Although petitioner believes that those doctors who requested surgery are correct and those doctors who denied the surgery are incorrect, this belief is not enough to show that the lack of surgery amounts to deliberate indifference. To the contrary, the dispute indicates that the denial of surgery does not rise to the level of an Eighth Amendment claim for inadequate medical care."). The subjective component of the Eighth Amendment analysis "prevents medical-malpractice claims from being transformed into constitutional claims." *Quigley v. Tuong Vinh Thai*, 707 F.3d 675, 681 (6th Cir. 2013); *see also Jennings v. Al-Dabagh*, 97 F. App'x 548 (6th Cir. 2004) (inmate's personal opinion that his medical care was substandard, or that he was not given requested treatment because of costs associated with it, raised claims of state-law medical malpractice, not constitutionally defective medical care); *Shofner v. Comacho*, 230 F.3d 1359 (6th Cir. 2000) (affirming dismissal of a case presenting a disagreement over a private surgeon's recommendation for surgery and the prison officials' decision against surgery for prisoner's back problem); *Durham v. Nu'Man*, 97 F.3d 862, 869 (6th Cir. 1996) ("The prisoner's complaints go to the adequacy of the medical care; they do not raise an issue of unnecessary and wanton infliction of pain as required under *Estelle*"); *Westlake*, 537 F.2d at 860 n.5 (distinguishing between a complaint alleging a complete denial of medical care and one where the prisoner was simply second-guessing medical judgments and attempting to constitutionalize claims sounding in tort); *Alexander v. Fed. Bureau of Prisons*, 227 F. Supp.2d 657 (E.D. Ky. 2002) (noting that "ordering a specific type of surgery is not the appropriate function of this Court."); *Holt v. Campbell County, Ky.*, No. 2009-082, 2013 U.S. Dist. LEXIS 80252, at *18-19 (E.D. Ky. June 7, 2013) ("While plaintiff would have

preferred the drugs he took prior to entering the CCDC, it is well established that a difference of opinion as to the approach to an inmate's medical treatment does not demonstrate the 'deliberate indifference' necessary to state a claim under the Eighth Amendment."). Thus, disputes which lie solely with the adequacy of the treatment and/or the course of treatment prescribed do not rise to the level of an Eighth Amendment claim.

Here, Haynes has failed to establish that the defendants were deliberately indifferent to his medical needs. Rather, he merely expresses a disagreement with the choice of medications and treatment that he has been provided at USP-McCreary for his skin condition. To reiterate, Haynes has been seen and examined regularly by USP-McCreary's Health Services staff for his chronic skin problems since 2010. From his arrival there in mid-July, 2010 through July 28, 2013, Haynes' medical records establish that he has been examined and treated by several different medical personnel. Numerous cultures have been taken and laboratory tests have been performed, and Haynes has been prescribed a plethora of medications for treatment of his ongoing skin problem. Further, he has been given keloid injections and has been counseled and advised on how to manage his skin condition. Additionally, he has been examined by two dermatologists, and he was offered the use of Accutane, all in a concerted effort to evaluate and provide proper treatment for his skin condition.

Contrary to Haynes' allegations, the BOP's medical records concerning the treatment he has received for his chronic skin condition, reflect that prison personnel at USP-McCreary have not disregarded or ignored Haynes' ongoing, difficult-to-manage medical problem.[8] The medical

---

8     Notably, contrary to Haynes' claims, he even acknowledges that he was "prescribed numerous . . . medication[s]" and that when he informed Health Services that his condition worsened, "the defendants

records establish that his requests were promptly processed, he was examined, and treatment was provided. *See Hyatt v. Sewell*, 197 F. App'x 370, 370 (5th Cir. 2006) ("although there were some delays in his treatment . . . the summary judgment evidence shows that [the plaintiff] was seen regularly, that treatment was provided, and that any delays were the result of at most negligence rather than any deliberate indifference to [the plaintiff's] serious medical needs). Further, Haynes has failed to provide any evidence to support his claims or which refutes the defendants' well-supported arguments. *See Jennings*, 97 F. App'x. at 550 ("In order to show a constitutional violation based on an alleged delay in treatment, the prisoner must place verifying medical evidence in the record establishing the detrimental effect of the delay.") (citing *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001)). Simply put, there is no evidence that Haynes was at an excessive risk of serious harm or that any of the defendants failed to take adequate precautions to protect him from harm.

At best, Haynes can only establish that he was not satisfied with the medical treatment he received. He only presents a difference of opinion or dispute as to the adequacy of treatment and/or the course of treatment the defendants have prescribed. Haynes has failed to demonstrate that the defendants have been deliberately indifferent to his medical needs. His claims regarding the adequacy of the medical treatment he has received concern, at most, matters of medical opinions and/or medical judgment, neither of which constitutes deliberate indifference to his medical needs. For these reasons, the Court will grant the defendants' motion for summary judgment.

---

conducted test[s] on [him]." [Record No. 32, pp. 2, 4] Rather, he states that "[a]fter so many attempts of treatment [he] has lost faith" with the medical personnel at USP-McCreary. [Record No. 24, p. 2]

Additionally, having concluded that Haynes has failed to establish a constitutional claim of deliberate indifference, the Court need not address the remaining reasons advanced by the defendants in support of their motion.

## IV.

### A. Motion to Amend Complaint

On the same day that Haynes filed a response to the defendants' motion, he also moved for leave to amend his Complaint, pursuant to Rule 15(a). [Record No. 25] Haynes seeks to add four new defendants to this action: Medical Provider Zugula, Dr. Vazquez-Velazquez, Medical Administrator Baron, and temporary contractual employee Stephanie Martin.[9] Haynes provides no explanation for the delay in seeking leave to amend beyond stating that the Court should freely give leave when justice so requires. [*Id.*, p. 2 (quoting Fed. R. Civ. P. 15(a)(2))] However, this is insufficient. The plaintiff's motion will be denied as unduly delayed as well as unduly prejudicial.

Nonetheless, even if the Court were to ignore the untimeliness of Haynes' motion to amend, because Haynes has failed to establish a constitutional claim of deliberate indifference, his proposed amendment would be futile. A court is not required to grant leave to amend under Rule 15 if the amendment would be futile. *Miller v. Calhoun Cnty.*, 408 F.3d 803, 817 (6th Cir. 2005). "Amendment of a complaint is futile when the proposed amendment would not permit the complaint to survive a motion to dismiss." *Id.* at 807; *see also Rose v. Hartford*

---

9    As noted above, Stephanie Martin was a named defendant in the original Complaint; however, the summons issued to her was returned unexecuted. As a result, she is not before the Court and currently is not a party to this action. Additionally, Medical Provider Zugula was mentioned in the body of Haynes' original complaint, but he did not name Zugula as a defendant. [Record No. 1]

*Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000) ("A proposed amendment is futile if the amendment could not withstand a Rule 12(b)(6) motion to dismiss.") (citing *Thiokol Corp. v. Dept. of Treasury*, 987 F.2d 376, 382-83 (6th Cir.1993)). Further, the "Court may also consider whether the matters contained in the amended complaint could have been advanced previously so that the disposition of the case would not have been disrupted by a later, untimely amendment." *Hendricks v. Wessell*, No. 2: 11-cv-399, 2012 U.S. Dist. LEXIS 15028, at *5 (S.D. Ohio Feb. 7, 2012) (citations omitted).

Haynes' motion to amend presents no new allegations. Rather, he attempts to incorporate the allegations of his original Complaint while simply seeking to add defendants. [*See* Record No. 25.] The Sixth Circuit has yet to decide whether Rule 21 or Rule 15 controls when an amendment seeks to add parties to a lawsuit. *Broyles v. Corr. Med. Servs.*, No. 08–1638, 2009 WL 3154241 (6th Cir.2009); *Grabow v. Cnty of Macomb*, No. 12-10105, 2012 U.S. Dist. LEXIS 140551, at *4-5 (E.D. Mich. Sept. 28, 2012). Regardless, the standard is the same. *Kunin v. Costco Wholesale Corp.*, No. 10-11456, 2011 U.S. Dist. LEXIS 140567, at *6 ( E.D. Mich. Dec. 7, 2011) (citation omitted); *Id.* at *7 ("Rules 15 and 21 allow amendment of pleadings when justice so requires and on just terms.") (citing Fed. R. Civ. P. 15 and 21).

Further, the majority of courts have held that an amendment to add or drop parties cannot be filed as a matter of course, even when filed before service of a responsive pleading as permitted by Rule 15,[7] but instead requires leave of court through an order under Rule 21. Consequently, a party may not be added by amendment of the complaint as a matter of course.

---

7    Haynes filed his motion to amend the Complaint after a responsive pleading had already been filed by the defendants.

*Moore v. Indiana*, 999 F.2d 1125, 1128 (7th Cir.1993) (although Rule 15(a) generally permits the plaintiff to amend his complaint once as a matter of course before a responsive pleading is served, the plaintiff's requested amendment required leave from the court because it sought to assert claims against additional defendants).

As indicated above, Haynes has failed to establish a claim of deliberate indifference to his medical needs. Amending the complaint for the purpose of adding new parties will not change the fact that Haynes has failed to show a constitutional claim of deliberate indifference. Thus, amendment would be futile. *See Cuco v. Fed. Med. Center-Lexington*, No. 05-CV-232-KSF, 2006 U.S. Dist. LEXIS 49711, at *149 (E.D. Ky. June 9, 2006) (quoting *LRL Properties v. Portage Metro Housing Authority*, 55 F.3d 1097, 1104 (6th Cir. 1995) ("Denial of [leave to amend] is not an abuse of discretion where the infirmities of the original complaint are not dissipated by the amended complaint.")); *see also Hamilton v. Bean*, 745 F.2d 1034, 1036 (6th Cir. 1984); *Neighborhood Devel. Corp. v. Advisory Council on Historic Preservation*, 632 F.2d 21, 23 (6th Cir.1980).

**V.**

Based on the foregoing discussion and analysis, it is hereby

**ORDERED** as follows:

1. Plaintiff Tristan Haynes' motion to amend the Complaint [Record No. 25] is **DENIED**.

2. Defendants PHS-PA Marc Anthony Bryant, APNP Karen Bennett-Baker, HSA Rhonda Jones, and AHSA Larry Stephens' motion for summary judgment [Record No. 18 ] is **GRANTED**. As a result, their motion to dismiss is **DENIED** as moot.

3. The claims asserted by Plaintiff Tristan Haynes against Defendants PHS-PA Marc Anthony Bryant, APNP Karen Bennett-Baker, HSA Rhonda Jones, and AHSA Larry Stephens are **DISMISSED**, with prejudice.

4. The claims asserted by Plaintiff Tristan Haynes against Defendant FNP Stephanie Martin are **DISMISSED**, without prejudice.

5. All claims having been resolved, this action is **DISMISSED** and **STRICKEN** from the Court's docket.

6. A final and appealable Judgment will be entered this date.

This 21st day of March, 2014.

Signed By:
*Danny C. Reeves* DCR
United States District Judge